UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
EDITH SALTOS,                                          :
                                                       :
                                                       :   Case No.
              Plaintiff,                               :
                                                       :   **COMPLAINT**
                                                       :
     - against -                                       :
                                                       :   **DEMAND FOR JURY TRIAL**
                                                       :
LOS OLIVOS, LTD.,                                      :
                                                       :
                                                       :
              Defendant.                               :
------------------------------------------------------------------x

Plaintiff, Edith Saltos ("Ms. Saltos"), by and through her counsel, the New York Legal Assistance Group ("NYLAG"), alleges against Defendant Los Olivos, Ltd. ("Los Olivos") as follows:

**PRELIMINARY STATEMENT**

1.      Ms. Saltos brings this action charging that Defendant Los Olivos violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and New York State Labor Law § 160 ("NYLL"), N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ("NYCRR"), by not paying her overtime at one-and-a-half times her regular rate for every hour worked over forty (40) per workweek; Ms. Saltos seeks her unpaid overtime, liquidated damages, attorney's fees and other available damages.

2.      Defendant also violated New York State Labor Law § 652 by not paying Ms. Saltos minimum wage for every hour worked; Ms. Saltos seeks her unpaid minimum wage, liquidated damages and other available damages.

3.      Ms. Saltos further brings this action charging that Defendant violated the New York State Human Rights Law, New York State Executive Law § 296 *et seq*. ("NYSHRL"), and the New York City

Human Rights Law, New York City Administrative Code § 8-107, *et seq*. ("NYCHRL"), by terminating her employment based on her status as a victim of domestic violence.

4. Ms. Saltos seeks damages to redress the injuries she suffered as a result of Defendant's discriminatory termination of her employment, including back pay, prejudgment interest, compensatory and punitive damages, the costs of this proceeding and attorney's fees, pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 297(4) and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-502.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), 28 U.S.C. § 1337 (interstate commerce) and 28 U.S.C. § 1331 (original federal question jurisdiction). This Court has supplemental jurisdiction over Ms. Saltos' related claims arising under state and city law pursuant to 28 U.S.C. § 1367(a).

6. This Court has personal jurisdiction over Defendant pursuant to New York Civil Practice Law & Rules § 301, in that Defendant resides and/or transacts business within the State of New York, employed Ms. Saltos within the State of New York and otherwise engaged in conduct that allowed for the exercise of jurisdiction as permitted by the Constitution of the United States and the laws of the State of New York and accompanied by service of process pursuant to Fed. R. Civ. P. 4(h)(1).

7. Venue is proper in this District because Defendant conducts business in this District, the acts and/or omissions giving rise to the claims alleged herein took place in this District and Plaintiff resides in this District.

## PARTIES

8. Plaintiff, Ms. Saltos, is a thirty-three (33) year old woman who resides at 65-40 80th Street, Middle Village, New York 11379.

9. Ms. Saltos worked for Los Olivos from November 2017 until December 2018, as a sales representative.

10. Upon information and belief, Defendant Los Olivos is a domestic business corporation with its principal office located at 105 Bi-County Boulevard, Farmingdale, New York 11735.

11. Los Olivos is a business or enterprise engaged in interstate commerce employing more than two (2) employees and earning gross annual sales of over $500,000.

12. During the relevant time period, Ms. Saltos worked for Los Olivos and was an "individual" within the meaning of the NYSHRL and a "person" within the meaning of the NYCHRL, protected against discrimination on the basis of domestic violence victim status.

13. Upon information and belief, Los Olivos has employed more than four (4) people for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year, and is an employer within the definition of the NYSHRL and the NYCHRL.

14. At all relevant times, Los Olivos employed Ms. Saltos.

## MS. SALTOS HAS FULFILLED THE ADMINISTRATIVE REQUIREMENTS OF HER CLAIMS

15. Contemporaneously with filing this Complaint, Ms. Saltos is serving a copy of this complaint upon the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the requirements of Section 8-502(c) of the New York City Administrative Code.

## FACTUAL BACKGROUND

16. On or about November 27, 2017, Ms. Saltos began working for Los Olivos as a sales representative. Her job duties primarily involved selling produce in supermarkets, organizing produce onto shelves and maintaining their cleanliness.

17. Ms. Saltos was a very good employee who never received any write-ups or disciplinary actions while working for the Defendant.

18. Ms. Saltos typically worked from Monday through Friday, beginning at 8 a.m. and ending at 5 or 6 p.m. Consequently, she typically worked forty-five (45) to fifty (50) hours per week.

19. Ms. Saltos earned approximately $575 per week throughout the duration of her employment with the Defendant. This amount was paid to her on a weekly basis, by check.

20. Ms. Saltos also received a weekly reimbursement in the amount of $175, paid to her in cash, for the amount she spent on gas and tolls while driving on behalf of the Respondent.

21. Though Ms. Saltos regularly worked forty-five (45) to fifty (50) hour weeks, she did not get paid proper overtime at time-and-a-half for every hour worked over forty (40) per workweek.

22. In addition, beginning in 2018, Ms. Saltos's weekly salary no longer met the New York State minimum wage for each hour worked, as the New York State minimum wage rose to $13.00 on December 31, 2017.

23. Ms. Saltos did not received a wage notice within ten business days of her hiring listing her rate of pay, allowances, and her employer's name, address, and telephone number.

24. Ms. Saltos also never received wage statements accompanying her weekly paychecks, containing the dates of work covered by the paycheck, her regular rate of pay, overtime rate of pay, the number of regular hours worked, the number of overtime hours worked, gross wages, deductions, allowances, and the employer's name, address, and telephone number.

25. Ms. Saltos was at all relevant times a victim of domestic violence. Ms. Saltos has a history of being subjected to violent assaults by her ex-husband, Kenny Gavilanes ("Mr. Gavilanes"). She filed Orders of Protection against him in August of 2018, on November 8, 2018, on January 10, 2019, and on February 14, 2019, due to his physical abuse.

26. One particularly egregious example of his physical abuse occurred on November 22, 2018. On this day, Mr. Gavilanes showed up at Ms. Saltos's home, despite the Order of Protection she had filed against him on November 8, 2018. Ms. Saltos asked Mr. Gavilanes to leave, and told him she was going to call the police on him for violating her Order of Protection. In response, Mr. Gavilanes snatched Ms. Saltos's phone before she could make the call, dragged Ms. Saltos to his car and then forced her to travel to Long Island. After physical assaulting Ms. Saltos, Mr. Gavilanes dropped her off at a nearby Citibank and left her to find her own way home. Afterwards, Mr. Gavilanes filed a complaint with the police, claiming that Ms. Saltos was the one who had stolen his car, forced him out to Long Island, and physically assaulted him, despite the fact that Mr. Gavilanes had no physical marks and was in possession of his own car at the time he presented himself to the police.[i]

27. On the night of Wednesday, December 12, 2018, Mr. Gavilanes once again arrived at Ms. Saltos's home to threaten and assault her. After Ms. Saltos suffered several blows to her legs and arms, Mr. Gavilanes left her residence.

28. Barely able to walk, Ms. Saltos knew that she would be unable to properly perform her job the following day, which required extensive mobility and standing. Ms. Saltos therefore sent a text message to her supervisor, Juan Polanco ("Mr. Polanco"), informing him she did not feel well and would not be at work on Thursday, December 13, 2018.  Ms. Saltos then called the police to place a felony complaint against Mr. Gavilanes for the incident.

29. In the early morning of Thursday, December 13, 2018, the police arrived at Ms. Saltos's home to help her file a police report against Mr. Gavilanes. At this time, the police also told Ms. Saltos that there was a warrant for her arrest and that she needed to present herself to the required precinct. The warrant was due to the false police report Mr. Gavilanes filed against Ms. Saltos on November 22, 2018.

30. Ms. Saltos promptly made her way to the required precinct and was formally arrested. At that time, Ms. Saltos also asked if she could see a doctor for the injuries she sustained from Mr. Gavilanes the night prior. Ms. Saltos was concerned that she had broken a bone given her severe limping, and was feeling faint due to not having eaten since the previous day. The precinct informed her that they would try to arrange for a doctor to visit her once they transferred her to her overnight location.

31. At this time, Ms. Saltos also used her only permitted phone call to contact Mr. Polanco and inform him that she was going to be attended by a doctor and would not be able to arrive for work on time the following day, Friday, December 14, 2018. Upon information and belief, Mr. Polanco said this was fine so long as Ms. Saltos was at work by noon on Friday, December 14.

32. The following afternoon of Friday, December 14, one of the penitentiary physicians treated Ms. Saltos for high blood pressure, general anxiety and unease, and for the injuries she sustained as a result of Mr. Gavilanes's assault.

33. Ms. Saltos's arraignment was also postponed for later in the day than it was originally scheduled, as a result of which Ms. Saltos could only the leave the jail at approximately 9 p.m. on Friday, December 14.  Ms. Saltos was not allowed to access her phone again until her release, such that she could not notify Los Olivos that she would not be able to make it into work at all that Friday, December 14.

34. Upon returning to work on Monday, December 17, Mr. Polanco suspended Ms. Saltos for her "unauthorized absence from work" on Friday, December 14. Mr. Polanco said that Los Olivos would need documentation showing that she was sick and had been seen by a doctor.

35. Ms. Saltos explained to Mr. Polanco that she could not provide such documentation since the doctor had visited the jail. At this time, Ms. Saltos also disclosed the other circumstances surrounding her absences, including the fact that her abusive ex-husband had filed a false police report

against her and that she was jailed for two days, without access to any device with which to notify them that her stay had been extended. Mr. Polanco asked Ms. Saltos to bring in all relevant documentation so they could further evaluate her suspension.

36. The following day, December 18, Ms. Saltos dropped off all the relevant documents she had at Los Olivos's Human Resources office. This documentation included the Order of Protection Ms. Saltos placed against Mr. Gavilanes on November 8, 2018, the police complaint she filed against him on December 13, 2018, the felony complaint documenting the time and details of her arrest on December 13, 2018, and an inmate personal property record showing the date she was released.

37. Later that day, Ms. Saltos received a call from Los Olivos's Human Resources Manager, Doris Melissa Miner Salvador ("Ms. Miner"), who asked Ms. Saltos to recount everything that happened between her and her ex-husband the day of her arrest and on November 22, 2018.

38. Ms. Saltos recounted to Ms. Miner her history of being a victim of domestic violence, including the events leading up to the false police report Mr. Gavilanes filed against her after his kidnapping on November 22, 2018. Upon information and belief, Ms. Miner maintained an incredulous attitude, stating that "when someone goes to jail it's always for something," and that "if he hit you, then you just have done something to deserve it," clear examples of her discriminatory views of victims of domestic violence.

39. Ms. Miner also accused Ms. Saltos of having lied about being ill. Ms. Saltos explained to Ms. Miner that she had not lied, as she had in fact not been feeling well due to the emotional and physical abuse she endured at the hands of Mr. Gavilanes on December 12, 2018. Ms. Saltos reiterated that a physician had even visited her in prison to check on her condition.

40. Upon information and belief, Ms. Miner maintained that "being hit and being ill are not the same thing," and that Ms. Saltos had therefore lied.

41. Ms. Saltos felt deeply humiliated by Ms. Miner's lack of understanding of the nature of domestic violence, and her discriminatory views of victims of domestic violence. Ms. Saltos reiterated that she was absent from work through no fault of her own, but simply due to her ex-husband's abuse.

42. At the end of this conversation, Ms. Miner again asked Ms. Saltos for documentation proving that she had by a doctor, in response to which Ms. Saltos again explained she did not know how to access such documentation since she was in a prison. Ms. Miner concluded by stating that Los Olivos would be in touch with Ms. Saltos in a few days about when her suspension would be over, and Ms. Saltos left the premises.

43. One week after her initial suspension, Ms. Saltos called Ms. Miner to see if there were any updates about when she could return to work. Ms. Miner stated that their team still needed to convene to make a decision, but that Ms. Saltos would likely not be able to return due to her unauthorized absences.

44. On December 27, 2018, Los Olivos terminated Ms. Saltos.

45. Ms. Saltos's termination took place only ten days after Los Olivos first learned of her domestic violence victim status; such close temporal proximity provides strong evidence of discriminatory intent.

46. The discriminatory termination of Ms. Saltos's employment on the basis of her domestic violence victim status has left her financially burdened and emotionally distraught.

## COUNT I

**OVERTIME VIOLATIONS UNDER THE FAIR LABOR STANDARDS ACT, 29 U.S.C. §§ 201 *et seq*.**

47. Ms. Saltos repeats and realleges each and every one of the allegations contained in paragraphs 1 through 46 above as if fully set forth herein.

48. At all relevant times hereto, Ms. Saltos was engaged in interstate "commerce" within the meaning of the FLSA.

49. Upon information and belief, at all relevant times hereto, Defendant has been and continue to be "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

50. At all relevant times hereto, Defendant has employed "employee[s]" including Ms. Saltos. Defendant had the power to hire and fire Ms. Saltos, control the terms and conditions of her employment and determine the rate and method of any compensation for its' employees.

51. Defendant Los Olivos constitutes an enterprise within the meaning of FLSA, 29 U.S.C. § 203(r).

52. Throughout the statute of limitations period covered by this claim, Ms. Saltos regularly worked in excess of forty (40) hours per workweek.

53. At all relevant times hereto, Defendant knowingly and willfully failed and refused to pay Ms. Saltos at one-and-a-half-times her regular rate of pay for all hours worked in excess of forty (40) hours per workweek, and willfully failed to keep required records, in violation of the FLSA.

54. Defendant had no good faith basis for believing that its pay practices as alleged above were in compliance with the law.

55. The foregoing conduct constitutes a "willful" violation of the FLSA. 29 U.S.C. § 255(a).

56. As a result of Defendant's violations of the FLSA, Ms. Saltos is entitled to all damages available under the FLSA, which include but are not limited to, all unpaid wages, overtime, liquidated damages equal to one hundred percent (100%) of the total wages owed, attorney fees, costs, and interests, as set forth by the FLSA, 29 U.S.C. § 216(b).

**COUNT II**

**OVERTIME VIOLATIONS UNDER THE NEW YORK LABOR LAW, N.Y.L.L. §§ 160(3), 161; 12 N.Y.C.R.R. § 142-2.2**

57. Ms. Saltos repeats and realleges each and every one of the allegations contained in paragraphs 1 through 56 above as if fully set forth herein.

58. At all relevant times, Ms. Saltos was employed by Defendant within the meaning of the New York Labor Law §§ 2, 651.

59. Defendant willfully failed to pay the Plaintiff overtime pay at a rate of one-and-a-half times her regular hourly rate for all hours worked in excess of forty (40) hours per workweek, in violation of the New York Labor Law. N.Y.L.L. §§ 160(3), 161; 12 N.Y.C.R.R. § 142-2.2.

60. As a result of Defendant's knowing or intentional failure to pay Plaintiff overtime wages for hours worked in excess of forty (40) hours per workweek, Plaintiff is entitled to compensation including but not limited to, unpaid overtime, liquidated damages, attorneys' fees, the costs of this action, and pre-judgment and post-judgment interest. N.Y.L.L. § 663(1).

## COUNT III

**MINIMUM WAGE VIOLATIONS UNDER THE NEW YORK LABOR LAW, N.Y.L.L §§ 650 *et seq.***

61. Ms. Saltos repeats and realleges each and every one of the allegations contained in paragraphs 1 through 60 above as if fully set forth herein.

62. At all relevant times, Ms. Saltos was employed by Defendant within the meaning of the New York Labor Law §§ 2, 651.

63. Defendant willfully failed to pay Ms. Saltos the mandated minimum wage for all hours worked, in violation of New York Labor Law § 652.

64. As a result of Defendant's knowing or intentional failure to pay Plaintiff the minimum wage for every hour worked, Plaintiff is entitled to compensation including but not limited to her unpaid

wages, liquidated damages, attorneys' fees, the costs of this action, and pre-judgment and post-judgment interest. N.Y.L.L. § 663(1).

## COUNT IV

**NOTICE AND RECORD-KEEPING VIOLATIONS UNDER THE NEW YORK LABOR LAW, N.Y.L.L. § 190** *et seq.*

65. Ms. Saltos repeats and re-alleges each and every one of the allegations contained in paragraphs 1 through 64 above as if fully set forth herein.

66. Upon information and belief, the Defendant willfully failed to furnish Ms. Saltos with a "wage notice" in her primary language, containing her rate or rates of pay and basis thereof, whether paid by the hour shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, in violation of N.Y.L.L. § 195(1).

67. Upon information and belief, the Defendant also willfully failed to furnish Ms. Saltos with a "wage statement" accompanying each payment of her wages, containing dates of work covered by that payment of wages; the name of employee; the name of employer; the address and phone number of employer; the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages, in violation of N.Y.L.L. § 195(3).

68. Due to Defendant's violations of the NYLL, Ms. Saltos is entitled to recover from Defendant fifty dollars ($50) for each workday that the employer's violation of the wage notice requirement occurred or continue to occur, and two-hundred and fifty dollars ($250) for each workday

that the employer's violation of the wage statement requirement occurred or continue to occur, for up to a total of five-thousand dollars ($5,000) for each respective violation, in addition to reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by the N.Y.L.L. § 198(1-b), (1-d).

## COUNT V

**DISCRIMINATION BASED ON DOMESTIC VIOLENCE VICTIM STATUS IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW, N.Y. Exec Law § 296** *et seq.*

69. Ms. Saltos repeats and realleges each and every one of the allegations contained in paragraphs 1 through 68 above as if fully set forth herein.

70. As a survivor of domestic violence, Ms. Saltos was and is a member of a protected group under the NYSHRL.

71. Ms. Saltos was, and continues to be, qualified for her job.

72. By the acts and practices described above, Defendant Los Olivos, through its agents, discriminated against Ms. Saltos on the basis of her domestic violence victim status in violation of the NYSHRL by intimidating her, suspending her, and terminating her employment due to her domestic violence victim status.

73. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Ms. Saltos has suffered and continues to suffer substantial damages, including but not limited to lost income, severe mental anguish and emotional distress, for which she is entitled to an award of monetary damages and other relief.

74. Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYSHRL for which Ms. Saltos is entitled to an award of punitive damages, declaratory and injunctive relief, reasonable attorneys' fees and any such other relief as the Court deems just and proper, pursuant to the N.Y. Exec. Law § 297(4).

## COUNT VI

## DISCRIMINATION BASED ON DOMESTIC VIOLENCE VICTIM STATUS IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW, N.Y.C. Admin. Code § 8-107 *et seq.*

75. Ms. Saltos repeats and realleges each and every one of the allegations contained in paragraphs 1 through 74 above as if fully set forth herein.

76. As a survivor of domestic violence, Ms. Saltos was and is a member of a protected group under the NYCHRL.

77. Ms. Saltos was, and continues to be, qualified for her job.

78. By the acts and practices described above, Defendant Los Olivos, through its agents, discriminated against Ms. Saltos on the basis of her domestic violence victim status in violation of the NYCHRL by intimidating her, suspending her, and terminating her employment due to her domestic violence victim status.

79. As a direct and proximate result of Defendant Los Olivos's unlawful discriminatory conduct in violation of the NYCHRL, Ms. Saltos has suffered and continues to suffer substantial damages, including but not limited to lost income, severe mental anguish and emotional distress, for which she is entitled to an award of monetary damages and other relief.

80. Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Ms. Saltos is entitled to an award of punitive damages, declaratory and injunctive relief, costs of this action, reasonable attorneys' fees, and any such other relief as the Court deems just and proper, pursuant to the N.Y.C. Admin. Code § 8-502(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Ms. Saltos respectfully requests that this Court enter judgment:

A. Declaring that Defendant violated the Fair Labor Standards Act by failing to pay Ms. Saltos appropriate overtime compensation;

B. Declaring that Defendant violated the New York Labor Law by failing to pay Ms. Saltos overtime and minimum wage;

C. Declaring that Defendant violated the New York Labor Law by failing to provide Ms. Saltos with appropriate wage notices and wage statements;

D. Declaring that Defendant violated the New York State Executive Law § 296 *et seq*., and New York City Administrative Code § 8-107 *et seq*. in that Defendant discriminated against Ms. Saltos on the basis of her domestic violence victim status;

E. Awarding damages to Ms. Saltos resulting from Defendant's unlawful employment practices and to otherwise make Ms. Saltos whole for any losses suffered as a result of such unlawful employment practices;

F. Awarding Ms. Saltos unpaid overtime under the FLSA;

G. Awarding Ms. Saltos unpaid overtime and minimum wages under the NYLL;

H. Awarding Ms. Saltos liquidated damages in the amount of her unpaid FLSA wages;

I. Awarding Ms. Saltos liquidated damages in the amount of her unpaid NYLL wages;

J. Awarding Ms. Saltos compensation for failure to receive a wage notice and wage statements under the NYLL;

K. Awarding Ms. Saltos compensatory damages for mental, emotional and physical injury, distress, and pain and suffering under the NYSHRL and the NYCHRL;

L. Awarding Ms. Saltos punitive damages under NYCHRL and the NYSHRL;

M. Awarding Ms. Saltos attorney's fees, costs, pre-judgment interest and expenses incurred in the prosecution of this action;

N. Awarding Ms. Saltos such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

**WHEREFORE**, Plaintiff demands judgment against Defendant in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs and disbursements of action; and for such other relief as the Court deems just and proper.

**DATED:** November 1, 2019
New York, New York

Yours,

_____
Beth E. Goldman, Esq.
New York Legal Assistance Group
7 Hanover Square, 18th Floor
New York, NY 10004
Elissa Devins, Esq., of Counsel
(P) 212-613-5056
(F) 212-714-7322
*Attorney for Plaintiff*

---

[i] The practice of aggressors filing false police charges against their victims is a very common practice, used to attempt to shift culpability away from themselves and exert greater power and control over their victims. *See* Sarah M. Buel, *Effective Assistance of Counsel for Battered Women Defendants: A Normative Construct,* 26 Harv. Women's L.J. 217, 246 (2003).

## Certificate of Translation

I, Layla Malamut, hereby state that I am fluent in English and Spanish and that I have translated, verbally and in writing, the attached Complaint, from Spanish to English.

Dated: November 1, 2019

_____
Layla Malamut